## MINNIE GARBUSH v. NEW YORK LIFE INSURANCE COMPANY.[1]

July 1, 1927.

No. 26,158.

**What evidence is necessary to obtain reversal of verdict of suicide.**
    1. The party having the burden of proof of suicide cannot secure the reversal of a finding or verdict contra unless the evidence precludes every reasonable hypothesis of natural or accidental death.

**Instruction in reference to presumption against suicide approved.**
    2. An instruction that the presumption against suicide is strong and not to be displaced by slight evidence *held* not error when coupled with statements that the presumption is conclusive only where there are no circumstances which on fair consideration might lead to the conclusion of suicide, and that suicide, notwithstanding the presumption, can be established by a fair preponderance of evidence.

Appeal and Error, 4 C. J. p. 854 n. 66; p. 880 n. 96.
Trial, 38 Cyc. p. 1778 n. 73; p. 1779 n. 75, 76; p. 1785 n. 89.

See note in 37 A. L. R. 171; 14 R. C. L. 1237; 3 R. C. L. Supp. 362; 6 R. C. L. Supp. 870.

Defendant appealed from an order of the district court for Washington county, Stolberg, J., denying its motion for a new trial. Affirmed.

*Doherty, Rumble, Bunn & Butler* and *John Courtney*, for appellant.

*Reuben G. Thoreen* and *Sullivan & Neumeier*, for respondent.

Stone, J.

Appeal by defendant from an order denying a new trial, after verdict for plaintiff, in an action to recover, under a policy of life insurance, the added indemnity for death because of "external, violent and accidental cause," self-destruction expressly excluded.

[1]Reported in 214 N. W. 795.

1. The verdict reflects the view that the death was accidental. The main question here is whether that conclusion is sustained by the evidence. The brief facts are these: The deceased was a hardware merchant at Stillwater, the store facing the main street in its busiest section. He was in good health, except that recent symptoms made an operation for appendicitis seem imminent. There is no evidence that he was much in dread of that. His business was reasonably prosperous, and his home life seemingly quite ideal. The deceased came to his death early on a Saturday evening in April, 1926, in his store, then open for business and in charge of himself and his wife. Mrs. Garbush, from the rear room, heard a shot which called her at once to the front. There, behind and at the end of a counter next the show window, she found her husband dead or dying from the effects of a bullet wound just received. The weapon was a 32-calibre automatic pistol, which had been the property of and more or less used by the deceased for some time. To what extent he was careful and expert in the handling of it or familiar with its mechanism was a question for the jury.

The bullet entered the left breast and pierced the heart. Powder burns on the clothing just over the wound indicate that the muzzle of the weapon was very close to the person of the deceased at the moment of discharge. The pistol was but a few inches from the right hand as the body lay on the floor. Death at the hands of another is clearly negatived. There is evidence that for some time and even during that day the deceased had been making plans for the future. There is nothing in the case of melancholia, despondency, and no more than a possibility of temporary depression, the inference being rather that Mr. Garbush was cheerfully and optimistically inclined. The absence of proof of motive is complete. The circumstance that death found Mr. Garbush just inside the show window of his store with people passing on the street and customers likely to enter is also persuasive that the act was accidental rather than intentional. Those facts, we feel, with the strong presumption against suicide, put the verdict where we cannot say that it has no reasonable support in the evidence.

The strongest argument for defendant is that the mechanism of the pistol is an efficient preventive of accidental discharge. It is of Colt construction, characterized by two safety devices. One is a catch, so placed as to be easily operated by the thumb, pushed on or off, as the grip is held in the right hand. The other is a sear lock in the rear of the grip designed to make discharge impossible unless it be squeezed forward and there held while the trigger is pulled. There is merit in the argument, but not enough to overcome, as against the verdict, the contrary circumstances already referred to. The possibility that the automatic safety device was at the time being and for some undisclosed reason inoperative is not negatived. The mechanism is efficient but not infallible. The hypothesis of carelessness is not out of the question. An automatic pistol is always dangerous to its possessor. The one here involved was much used in the store as a demonstrator. It is easy, if the utmost care is not exercised habitually, to permit a cartridge to remain in the magazine and get thence to the chamber without the knowledge of the user. The weapon, so inadvertently loaded, could then be easily but accidentally discharged in the handling. That very thing has happened to others. True, we are dealing now with improbabilities. But the hazard of accidental discharge is so far present that, with the other facts of this case, we cannot say that a verdict was demanded, as a matter of law, for the defense, which had the burden of proof of self-slaughter.

In Hawkins v. Kronick C. & L. Co. 157 Minn. 33, 195 N. W. 766, we considered Lindahl v. Supreme Court I. O. F. 100 Minn. 87, 110 N. W. 358, 8 L.R.A.(N.S.) 916, 117 A. S. R. 666, and Kornig v. Western Life Ind. Co. 102 Minn. 31, 112 N. W. 1039, and concluded that those cases went too far in holding that where circumstantial evidence is relied upon to prove suicide the party having the affirmative must, upon the trial, preclude every reasonable hypothesis of natural or accidental death. Our conclusion was that the presumption against suicide, while a strong one, does not control the fact issue where there is substantial proof from which rational

consideration may reach the conclusion of suicide. In that case, a determination of suicide by the triers of fact must stand. But after a contrary determination of the fact issue, such as we have here, it is logically impossible to do anything but sustain it unless the evidence does preclude every reasonable hypothesis of natural or accidental death. For the reasons indicated, we feel that the hypothesis of accidental death is not precluded.

2. The only other assignment of error for consideration challenges an instruction as follows: "There is a presumption against self slaughter. It is a strong presumption and not to be displaced by slight contrary proof." The last sentence is quoted from the discussion of the subject in the Hawkins case. The occasion serves as a reminder of the danger of quoting, as an instruction to a jury, a mere argument used in an opinion of an appellate court in support of a conclusion of law, as distinguished from the statement of that conclusion itself. Here, however, we do not discover that the instruction was wrong. The whole charge on this subject is as follows:

"There is a presumption against self slaughter. It is a strong presumption and not to be displaced by slight contrary proof. But it is not conclusive, unless there are no circumstances which upon fair consideration might lead a reasonable mind to the conclusion of suicide. It is a presumption which controls the decision only where there is no substantial proof to the contrary. Such a presumption is not of itself evidence. However, it must stand in the case and be decisive of it until overcome by testimony which shall outweigh the presumption. It casts upon the defendant who claims that death was intentional the burden of establishing it by a fair preponderance of the testimony."

Under the conclusions stated in the Hawkins case, there can be no objection to the charge. The presumption operates against the party having the burden to prove suicide, and as against it, it is plain law that he cannot maintain his case by "slight proof."

The case is clearly distinguishable from Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580, wherein there was a reversal be-

cause of a charge that the presumption against negligence, as applied to contributory negligence, must yield "to clear proof." The argument now is that to say that the presumption against suicide, plainly much stronger than that against negligence, cannot be overcome by slight contrary proof is equivalent to saying that it requires "clear proof" to overcome it. We should say rather that the implication is that substantial proof, and certainly preponderating proof, would be sufficient to overcome the presumption. But however that may be, the argument is deprived of application here because alone of the fact that in the same connection the jury was told that a fair preponderance of evidence was all that was required to establish suicide. There is nothing, then, which could have given the jury the idea, which might have been conveyed in the Aubin case "under emphasis," that certainty rather than preponderance of proof was required to overcome the presumption. No such construction was possible here.

Order affirmed.